## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| NICHOLAS TINA, individually, and on behalf of all others similarly situated, and LISSETTE TINA, individually, and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>WESTGATE VACATION VILLAS, LLC, a Florida limited liability company, WESTGATE RESORTS, LTD., a Florida limited partnership, WESTGATE MARKETING, LLC, a Florida limited liability company, and WESTGATE RESORTS, INC., a Florida corporation,<br><br>     Defendants. | Case No.<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs, NICHOLAS TINA, and LISSETTE TINA (the "Plaintiffs" or the "Tina Family"), individually and on behalf of all others similarly situated, sue Defendants, WESTGATE VACATION VILLAS, LLC ("Westgate Villas"), WESTGATE RESORTS, LTD. ("Westgate Resorts Ltd."), WESTGATE MARKETING, LLC ("Westgate

Marketing"), and WESTGATE RESORTS, INC. ("Westgate Resorts"), (referred to herein collectively as "Westgate" or "Defendants[1]") and allege:

### INTRODUCTION

1.    This Complaint seeks to enforce the Military Lending Act ("MLA"), 10 U.S.C. § 987, which was enacted to protect members of the United States Military from an epidemic of predatory lending that endangers our Nation's military readiness and impacts servicemember retention.

2.    Westgate sells vacations, or more accurately, the potential to book a future vacation based on factors solely in Westgate's control.  The vacations are sold through a timeshare mechanism across the United States.

3.    Westgate targets several groups of consumers, including members of the United States Military.  Plaintiff Nicholas Tina is an active-duty member of the United States Military.  Along with his wife,

---

[1] Plaintiffs allege claims against all Defendants as alter egos of one another as explained more fully herein.

Lissette Tina, they were pressured into purchasing a timeshare interest from Westgate in July 2021.

4.     Westgate provides financing for the sale of its timeshare interests.  However, a consumer's purchase of a Westgate timeshare interest is more akin to an installment agreement allowing the purchaser to have the potential to rent vacation properties from Westgate sometime in the future, which often must be at least one year or more in the future from the booking date.

5.     The timeshare interests sold and financed by Westgate are covered by the MLA because they extend consumer credit to covered borrowers primarily for personal, family, or household purposes and are subject to finance charges and payable pursuant to written agreements in more than four installments.

6.     The MLA is relatively short and consists of only the following eight provisions: (a) Interest; (b) Annual Percentage Rate; (c) Mandatory Loan Disclosures; (d) Preemption; (e) Limitations; (f) Penalties and Remedies; (g) Servicemembers Civil Relief Act; (h) Regulations; and (i) Definitions.  10 U.S.C. § 987 (a) – (i).

7.     The "interest" provision of 10 U.S.C. § 987(a) provides that a creditor who extends consumer credit to a covered member shall not require the covered member to pay interest on a loan that contains terms specifically prohibited by the MLA.  Importantly, the "limitations" section of the MLA specifically prohibits the use of mandatory arbitration clauses and waivers of other legal rights, including class action and jury trial waivers.  10 U.S.C. § 987(e)(2) and (e)(3). Accordingly, every time Westgate requires Plaintiffs or other covered members/class members to pay interest on timeshare loans, which all contain arbitration clauses, class action waivers, and jury trial waivers, it violates 10 U.S.C. § 987(a)(3) of the MLA.  Plaintiff and other covered borrowers were damaged by the interest they paid on timeshare loans which contain prohibited terms.

8.     As a result of including these prohibited terms in its timeshare loans and charging interest thereon, the "penalties and remedies" section of the MLA makes the loans "void from inception" as a matter of law.  10 U.S.C. § 987(f)(3). Plaintiffs and other covered borrowers were damaged by the amounts of principal, fees, interest, taxes, maintenance charges and all other charges they paid on void

4

timeshare loan agreements and by their purported obligation to pay more illegal charges in the future. Alternatively, Plaintiffs may recover these items via restitution. Westgate is liable to Plaintiffs and the class for actual damages or restitution, punitive damages, equitable and declaratory relief and costs of action, together with reasonable attorneys' fees pursuant to 10 U.S.C. § 987(f)(5).

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this matter pursuant to 10 U.S.C. § 987 and 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.    This Court has personal jurisdiction over Defendants because Defendants are entities that were formed or incorporated in Florida, have been headquartered in Florida at all times relevant to this Complaint, and they engaged in much of the actions complained of herein in Florida.

11.    Venue is proper in this district pursuant to 10 U.S.C. § 987(f)(5)(E) and 28 U.SC. § 1391, because one or more of Defendants resides in the district and a substantial part of the events and omissions giving rise to the claims occurred in the district.

12. Plaintiffs have standing because they suffered a concrete injury in that: (a) they have paid and are purportedly obligated to pay money under the terms of a purported loan agreement that was void from inception because its terms violated the MLA, and (b) they have paid interest and are purportedly obligated to pay interest which was and will be charged illegally by Westgate pursuant to a loan agreement that contains provisions prohibited by the MLA.

## PARTIES

13. At all times material hereto, Plaintiff NICHOLAS TINA was sui juris, a citizen of Missouri, and on active duty in the United States Airforce.

14. At all material times hereto, Plaintiff LISSETTE TINA was sui juris, a citizen of Missouri and a military dependent.

15. Nicholas Tina and Lissette Tina are hereafter referred to jointly as the Tina Family.

16. Defendant Westgate Vacation Villas, LLC, is an active limited liability company formed and operating in Florida under the name Westgate Vacation Villas, LLC, with its principal place of business in Orlando, Florida. At all times material hereto, Westgate Villas

marketed, sold, sells, and finances timeshare interests at least within the State of Florida.

17.    Defendant Westgate Resorts, Ltd., L.P., is an active limited partnership formed and operating in Florida under the name Westgate Resorts, Ltd., with its principal place of business in Orlando, Florida. Upon information and belief, at all times relevant to this lawsuit Westgate Resorts, Ltd., operated, in whole or in part, Westgate Villas and all other Westgate timeshare locations in the United States.

18.    Westgate Marketing, LLC is an active limited company formed and operating in Florida under the name Westgate Marketing, LLC, with its principal place of business in Orlando Florida. Upon information and belief, Westgate Marketing, LLC ran the sales operations during which MLA disclosures should have been made and the documents in issue were executed at Westgate Villas and all other Westgate timeshare locations in the United States.

19.    Defendant Westgate Resorts, Inc. is a Florida corporation with its principal place of business in Orlando, Florida. Upon information and belief, at all times relevant to this lawsuit Westgate

Resorts, Inc. operated, in whole or in part, Westgate Villas and all other Westgate timeshare locations in the United States.

20. Upon information and belief, Westgate Villas is a single purpose entity that exists solely as a legal vehicle to own the property in Orlando Florida, and which has no employees to conduct sales of timeshare interests and operate the property. Also, upon information and belief, all Westgate timeshare properties are likewise owned by single purpose entities which have no employees to conduct sales of timeshare interests and operate the properties.

21. Upon information and belief, Westgate Marketing, LLC performs as an agent of Westgate Villas by serving as the real estate broker on all of Westgate Villas timeshare sales.

22. Upon information and belief, Westgate Resorts, Inc. is the statutory manager of Westgate Villas and all Westgate properties. The Warranty Deed provided to the Tina Family by Westgate Vacation Villas, LLC, was signed by Westgate Resorts, Inc., a Florida corporation, as its "Manager."

23. Upon information and belief, Westgate Resorts, Ltd. is a member of Westgate Villas and is a member of all Westgate properties.

24.   Westgate Vacation Villas, LLC, is the entity listed on the Tina Family's Contract for Purchase and Sale, the Note, and the Closing Disclosures.

25.   At all times herein mentioned, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of each of the other Defendants and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, and their collective conduct violates the MLA as to Plaintiffs and Class members.

26.   At all times herein mentioned, Defendants and each of them, were fully informed of the actions of their agents and employees, and thereafter no officer, director or managing agent of Defendants repudiated those actions, which failure to repudiate constituted adoption and approval of said actions and all Defendants and each of them, thereby ratified those actions.

27.   There exists and, at all times herein mentioned, there existed a unity of interest in ownership between certain Defendants and other

certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendants and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as entities distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and/or would promote injustice.

28.   For the reasons set forth in paragraphs16-28, Defendants are jointly and severally liable for all the violations of the MLA alleged herein.

## FACTUAL ALLEGATIONS

### The Military Lending Act, 10 U.S.C. § 987

29.   The United States Congress passed the Military Lending Act of 2006 (hereinafter "MLA"), which was implemented as part of the John Warner National Defense Authorization Act for Fiscal Year 2007, Section 670, to protect military servicemembers from unfair or abusive loan or credit sale transactions, such as high interest, short-term, or installment loans to inexperienced military borrowers, who in years prior to its enactment had fallen victim to predatory lending.

30.    Westgate targets military consumers for such predatory lending by, among other things, offering free stays to military families during Veterans Day Weekend and by offering discounts to military families year-round who want to stay near the theme parks in Orlando. These offers are publicized on websites widely used by the military community like militarydisneytips.com and militarybridge.com. Military families are lured into high-pressure timeshare sales presentations and are frequently convinced to purchase timeshare interests.

31.    A combination of factors make servicemembers uniquely attractive victims, including, among other reasons: 1) they are expected to pay their financial obligations in a proper and timely manner pursuant to the Uniform Code of Military Justice, 2) they have a reliable source of income that is subject to garnishment, 3) they are relatively unsophisticated consumers given their average age and educational background, and 4) for those servicemembers who have a security clearance, there is a serious penalty for nonpayment, because a failure to pay financial obligations often results in the loss of that security clearance and concomitant involuntary separation from the military.

32.    The MLA directs the Department of Defense ("DoD") to prescribe regulations to carry out the MLA. The DoD regulation, 32 C.F.R. Part 232, implementing the MLA contains limitations on and requirements for certain types of consumer credit extended to active duty servicemembers and their spouses, children, and certain other dependents ("covered borrowers"). Subject to certain exceptions, the regulation generally applies to persons who meet the definition of a creditor in Regulation Z and are engaged in the business of extending such consumer credit, as well as their assignees.

33.    Under the MLA, "consumer credit" is defined as:

Credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is:

    (i)    Subject to a finance charge; or

    (ii)    Payable by a written agreement in more than four installments.

32 C.F.R. § 232.3.

34.    Westgate's financing of Plaintiffs' and the Class's timeshare interests constitutes an "extension of consumer credit," as defined under the MLA, 32 C.F.R. § 232.3, because Plaintiffs and the other Class members were covered borrowers, their timeshare interests were

primarily for personal, family, or household purposes, Plaintiffs and the Class were subject to finance charges, and their debt was payable pursuant to written agreements in more than four installments.

35.    Specifically, as to Plaintiffs, in July 2021, Plaintiffs Nicholas Tina (who had active-duty status with United States Airforce at the time) and his spouse, Lissette Tina (a military dependent at the time) obtained financing from Westgate Villas to purchase a "timeshare interest" at the Westgate Villas in Kissimmee, Florida. In connection with the purchase and its financing, the Tina Family and Westgate Villas executed the standard form Contract for Purchase and Sale, Note, Warranty Deed and Lien on Real Property, and Arbitration Addendum, which along with the Declaration of Covenants, Conditions and Restrictions for Westgate Villas, a Timeshare Resort ("Timeshare Plan" or "Plan"), as amended, and the Master Mortgage, as amended, both of which are incorporated into the Warranty Deed and Lien, collectively constitute the "Agreement".

36.    The Agreement was subject to MLA requirements because it was an extension of consumer credit that was not a residential mortgage. *See* **Exhibit A** (Contract and Purchase for Sale); **Exhibit B** (Note);

13

**Exhibit C** (Warranty Deed and Lien on Real Property); and **Exhibit D** (Arbitration Addendum). In connection with the transaction, Westgate Villas and Westgate Marketing, LLC provided Closing Disclosures (**Exhibit E**) to the Tina Family.

37.    Plaintiffs' Agreement with Westgate is a standard form contract that does not materially differ in any way relevant to the claims in this action, and Westgate utilizes it for all its timeshare sales, making all Class members' Agreements materially the same. All Class members are subject to the terms of Timesharing Plans incorporated into their Warranty Deeds and Liens on Real Property. Pursuant to those Timesharing Plans, Westgate conveyed timeshare interests to Plaintiffs and all Class members consisting of the "Ownership in fee simple of an undivided interest as a tenant in common with the other Owners in the Resort Facility." In every case, the "Resort Facility" consists of one or more buildings containing far more than four units.

38.    As this Court and the Eleventh Circuit have already held, Plaintiffs' and the Class's timeshare interests are not ownership of a "dwelling" as that term is defined in 32 C.F.R. § 232.3(k), and thus the Agreements between Plaintiffs and the Class and Westgate did not

extend credit secured by an interest in a dwelling (i.e., did not create a residential mortgage as defined in 32 C.F.R. § 232.3(f)(2)(i)). Consequently, Westgate is a creditor as to Plaintiffs and the Class pursuant to 10 U.S.C. § 987(i)(5) and 32 C.F.R. § 232.3(i), and it extended consumer credit to them as defined in 10 U.S.C. § 987(i)(6) and 32 C.F.R. § 232.3(f)(1).

39.    The MLA requires certain disclosures both in writing and orally when a lender extends "consumer credit" to "covered borrowers":

- A statement of the MAPR applicable to the extension of credit;

- Any disclosure Regulation Z requires to be made in accordance with the applicable Regulation Z provisions; and

- A clear description of the payment obligation, which can be either a payment schedule for closed-end credit, or account opening disclosures consistent with Regulation Z for open-end credit, as applicable.

40.    Specifically, the statement of the MAPR need not contain the MAPR for the transaction expressed as a numerical value or dollar amount of charges. Instead, it must describe the charges that may be imposed, consistent with the MLA and terms of the agreement, to calculate the MAPR. The MLA provides a model statement, and lenders

may use the model statement or a substantially similar statement. No such disclosures were made to Plaintiffs and the Class in any written form or orally. Upon information and belief, it is Westgate's routine and systematic practice to not provide any form of these required MLA disclosures to covered borrowers.

41. The MLA requires that the disclosures be written and provided in a form that covered borrowers can keep. In addition to the written disclosures, lenders must orally provide the information in the statement of MAPR and in the description of the payment obligation. These oral disclosures may be communicated in person or via a toll-free telephone number provided to the borrower. No such required oral disclosures were ever made to Plaintiffs and the Class.

42. The MLA places a duty on creditors to determine before the transaction whether a potential borrower is a "covered borrower," and provides an easy to implement safe harbor to protect a creditor from liability if it reasonably implements the procedure. Specifically, the MLA permits creditors to use either of two methods when ascertaining whether a consumer is a covered borrower for purposes of the MLA's protections: (1) The MLA Database maintained by the Department of

Defense, or (2) consumer reports from a nationwide credit reporting agency. Westgate made no attempt to determine if Plaintiffs and the members of the Class were covered borrowers. It is Westgate's routine and systematic business practice to not determine whether a timeshare purchaser is a covered borrower.

43. As previously noted, 10 U.S.C. § 987(a)(3) prohibits a creditor from requiring a covered member to pay interest with respect to an extension of consumer credit that is specifically prohibited by the statute. Since the loan disclosures discussed above are mandatory, a loan agreement which does not provide the written disclosures is specifically prohibited by the statute. Accordingly, all interest which Plaintiffs and the Class have paid in the past and which their loan agreements purport to require them to pay in the future are illegal and constitute recoverable damages.

44. The MLA prohibits creditors from requiring military borrowers to submit to mandatory arbitration and from attempting to require waiver of a borrower's right to legal recourse under Federal law such as a jury trial under the Seventh Amendment and the right to bring a class action under Fed. R. Civ. P. 23. Yet, the standard form

Agreements Westgate entered into with Plaintiffs and the Class contained such prohibited contractual provisions in violation of the MLA, 28 U.S.C. § 987 (e)(2) & (3). *See* the Arbitration Addendum attached hereto as **Exhibit D**, page 1, providing for mandatory arbitration, a waiver of the right to bring a class action and a waiver of the right to a jury trial, pages 1 and 2; the Contract for Purchase and Sale, **Exhibit A**, page 2, waiving the right to a jury trial; and the Note, **Exhibit B**, page 1, waiving the right to a jury trial.

45. The inclusion of such prohibited provisions in the Agreements made Westgate's charging of interest in the past and purported right to charge it in the future illegal, damaging Plaintiffs and the Class in the amount of such interest and entitling them to recover such interest as actual damages for violating 10 U.S.C. § 987(a)(3). In addition, these provisions made the Agreements void from their inception. As a result, all payments made or still owing were made in connection with loans that never existed. Alternatively, Plaintiffs and the Class are entitled to recover all such amounts paid on void loans as equitable restitution.

## Westgate

46.    Westgate Villas is a lender and thus a creditor for timeshare interests at its property in Kissimmee Florida.  Westgate's entire marketing scheme is centered on the selling of vacations.  Every page of its website is replete with references to vacations and not to the selling of real estate.  The tab on the Westgate Resorts website titled "Explore Ownership" explains the true nature of what is sold in the timeshare transactions-- vacations, not an ownership interests in dwellings:

> Say goodbye to the standard old vacation and cramped hotel. Instead, say hello to vacation ownership and memorable family getaways that create memories of a lifetime!
>
> Vacation ownership in a timeshare like Westgate Resorts lets you choose the high road of vacations and enjoy everything from large, comfortable and luxurious villas to an extraordinary array of resort style activities and amenities. Our timeshare owners choose from dozens of beautiful resort properties across the United States in the most popular tourist destinations including:

- Orlando
- Las Vegas
- Gatlinburg
- Park City
- Branson
- Myrtle Beach
- Miami
- Williamsburg

- And more[2]

47.    Westgate Villas owns villas at its property for which it has sold and loaned the money to purchase thousands of timeshares, including, upon information and belief, making timeshare loans to hundreds of covered borrowers like Plaintiffs, and Westgate failed to provide all of them with the protections required by the Military Lending Act.

48.    Each of the other Westgate properties also have a single purpose entity that (1) owns the subject property and (2) serves as the creditor seller on all financing agreements.

49.    Upon information and belief, Westgate used the standard form Agreements for all the loans for timeshare interests made to covered members at the Westgate Villas and all Westgate properties with no relevant variations until February 28, 2025.

**Westgate Ceases Violation of the MLA**

50.    Despite the MLA's grant of a safe harbor from liability when creditors have a policy or procedure to ascertain whether a consumer is

---

[2] https://www.westgateresorts.com/vacation-ownership/

a military borrower subject to the MLA protections, Westgate failed to institute an adequate MLA policy or procedure until February 28, 2025.

51.    Until February 28, 2025, Westgate uniformly and systematically failed to implement complete MLA policies and procedures to ensure compliance with the MLA's mandatory written and oral disclosures and limitations as part of or in connection with their standard form Agreements that they use uniformly at their timeshare resort locations. There is no mention of MLA protections appearing anywhere in the Agreements and none were provided to Plaintiffs and the Class via any supplemental notices or disclosures.

52.    On or about February 28, 2025, Defendants implemented a nation-wide policy of issuing an MLA Disclosure to all covered borrowers. A copy Defendants' MLA Policy is attached as **Exhibit F**.

53.    Notably, the MLA Policy rectifies all of the alleged violations in this case, which systemically took place up until February 28, 2025, including (1) exemption from arbitration, (2) exemption from class action ban, and (3) exemption from the jury trial waiver. In addition, the MLA Disclosure informs covered borrowers of the existence of the MLA and that it may provide protections to covered borrowers.

## The Tina Family's Loan

54.     At the time of the subject transaction, Plaintiff Nicholas Tina served as a E7 Airforce. Lissette Tina is his spouse.

55.     On July 24, 2021, Plaintiffs signed a standard form Agreement with Westgate to obtain financing for a timeshare purportedly tied to Westgate Vacation Villas in Kissimmee, Florida. **Exhibits A-D**.

56.     All of the documents that are referenced in the Agreement inform the nature of the transaction and no single document reveals the entirety of the rights, obligations, and restrictions attendant to the transaction.

57.     Westgate Villas was a "creditor" which provided "credit" to Servicemember Plaintiff Nicholas Tina and his dependent Plaintiff Lissette Tina, as those terms are defined in 32 C.F.R. § 232.3(h) & (i).

58.     To obtain financing, the Tina Family provided their social security numbers and other credit information to Westgate.

59.     Westgate knew or should have known of his status as an active-duty military member, as Plaintiff, Nicholas Tina, provided

Westgate with his credit information and Westgate verified the same before entering into the Agreement.

60.     The Tina Family was coaxed into the Agreement with Westgate after Westgate reached the Tina Family with an online advertisement for a free stay at Westgate Villas. This is a common tactic used by Westgate to target the military and then subsequently require them to sit through a sales presentation.

61.     The Westgate Sales Representative lured the Tina Family into a high-pressure sales-pitch meeting with the promise of Visa gift card and a future stay just for sitting through the presentation.

62.     The Tina Family was then subjected to a four (4) hour high-pressure sales pitch presentation designed to ensure they and the other attendees would not leave without purchasing a timeshare property. Westgate's tactics were successful, as the Tina Family finally did agree to purchase a timeshare vacation interest.

63.     The Agreement obligates the Tina Family to make monthly payments, including interest, to Westgate in connection with their timeshare purchase in the amount of $372.61 for the next ten (10) years, until July 23, 2031. **Exhibits B, E**.

64.    In addition to the monthly 10-year loan payments, the Tina Family is obligated to pay additional fees, such as a maintenance assessment in the amount of $969.00 and ad valorem tax assessment in the amount of $136.00. **Exhibits A, C, E**.

65.    Even after the Tina Family's fulfillment of the loan obligation to Westgate, their payments will continue as they will be obligated to make payments for additional fees, such as additional maintenance assessments and the ad valorem tax assessment, forever.

## CLASS ALLEGATIONS

66.    Plaintiffs bring this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed "Class" includes the following:

> All active-duty service members or their dependents who financed the purchase of one or more timeshare interests via an extension of credit from Westgate Villas made from February 3, 2017 to February 28, 2025 ("the Class Period"), who paid interest, and who did not sign an MLA Disclosure form.

67.    The Class Period begins five years prior to the date of the original filing of the Complaint in *Steines v. Westgate Palace, LLC*, Case No. 6:22-cv-629-RBD-DAB. Because the Tina Family falls within the class pleaded in *Steines*, they are entitled to American Pipe tolling of the

24

statute of limitations for all claims asserted herein from the original filing date of *Steines* on February 2, 2022. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974); *Barnebey v. E.F. Hutton & Co.*, 715 F. Supp 1512, 1528–29 (M.D. Fla. June 19, 1989).

68.    Plaintiffs bring this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed "National Class" includes the following:

> All active-duty service members or their dependents who financed the purchase of one or more timeshare interests via an extension of credit from Westgate, excluding Westgate Palace, LLC, made from February 2, 2018 to February 28, 2025 ("the National Class Period"), who paid money, and who did not sign an MLA Disclosure.

69.    The National Class Period begins four years prior to the date of the original filing of the Complaint in *Steines v. Westgate Palace, LLC*, Case No. 6:22-cv-629-RBD-DAB. Because the Tina Family falls within the class pleaded in *Steines*, they are entitled to American Pipe tolling of the statute of limitations for all claims asserted herein from the original filing date of *Steines* on February 2, 2022. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974); *Barnebey v. E.F. Hutton & Co.*, 715 F. Supp 1512, 1528–29 (M.D. Fla. June 19, 1989).

70. Expressly excluded from the Class and National Class (collectively referred to as "Class members") are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and their legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

71. Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicates that the Class definition sshould be narrowed, expanded, or otherwise modified.

## Rule 23(a) Criteria

72. <u>Numerosity</u>. Because Westgate targets military consumers as set forth above, and because Westgate has likely entered into thousands of Agreements in connection with its over 14,000 timeshare units nationally over the last five years, Plaintiffs believe that the Class likely numbers in the hundreds and the National Class likely numbers in the thousands. For example, Westgate Villas has 1,182 units. Each unit can be sold at least 52 times (for each week of the year) and because some timeshare interests are only good every other year and because

26

Westgate sells more interests than the total weeks available, hundreds of timeshare interest can be sold for every unit. Thus, the members of the Class and National Class are so numerous that joinder of all of them is impracticable. The exact number of Class members is unknown, as such information is in the exclusive control of Westgate. The number of Class members can be easily determined by obtaining a list of persons who purchased and financed timeshare interests from Westgate and running the names and social security numbers through an appropriate DoD database or nationwide credit reporting agency. Upon information and belief, Westgate maintains the information electronically necessary to generate such a list necessary to identify the members of the Class.

73.   <u>Commonality</u>. Common questions of law and fact affect the rights of each Class member and common relief by way of declaration, injunction, restitution and/or damages is sought for Plaintiffs and Class members. Common questions of law and fact that affect all Class members include, but are not limited to:

>   a.   Whether Westgate entered into standard form Agreements with servicemembers and their dependents;

b. Whether the Agreements constitute the extension of consumer credit under the MLA;

c. Whether Westgate failed to provide required MLA written and oral disclosures;

d. Whether the Agreements require Plaintiffs and members of the Class to pay interest on loans that contain terms which violate the MLA;

e. Whether Westgate's standard form Agreements contain jury trial and class actions waivers in violation of the MLA;

f. Whether Westgate's standard form Agreements contain arbitration clauses in violation of the MLA;

g. Whether the timeshare Agreements between Plaintiffs and the Class and Westgate are void from their inception for violating the MLA;

h. Whether Westgate, through any and all of its affiliated entities, is a person who violated the MLA and can be civilly liable therefore;

i.    Whether Westgate Vacation Villas, LLC, Westgate Resorts, Ltd., Westgate Marketing, LLC, Westgate Resorts, Inc., are jointly and severally liable for the violations of the MLA committed by Westgate Villas; Westgate Resorts, Ltd.; Westgate Resorts, Inc.; and/or Westgate Marketing.

j.    Whether Westgate Vacation Villas, LLC, Westgate Resorts, Ltd., Westgate Marketing, LLC, and/or Westgate Resorts, Inc. were unjustly enriched by a contract that is void *ab initio*;

k.    The remedies and damages to which Plaintiffs and the Class are entitled to under 10 U.S.C. § 987 and/or the common law of restitution.

74.    <u>Typicality</u>. The claims and defenses of the representative Plaintiffs are typical of the claims and defenses of the Class because they are covered borrowers under the MLA like the rest of the Class and their claims arise under the same legal theories and out of a common course of conduct by Westgate. The Agreement and Plaintiffs' transaction with Westgate are highly similar to the standardized Agreements and

transactions between the other members of the Class and Westgate. Plaintiffs suffered statutory and actual damages of the same type and in the same manner as the Class they seek to represent. There is nothing peculiar about Plaintiffs' claims when compared to those of the other members of the Class.

75.    Adequacy. The representative Plaintiffs will fairly and adequately assert and protect the interests of the Class. Plaintiffs have no conflict of interest that will interfere with maintenance of this class action. They have hired attorneys who likewise have no conflicts of interest with the Class and who are experienced in prosecuting class action and consumer protection law claims and will adequately represent the interests of the Class.

### Rule 23 (b) Criteria

76.    Predominance and Superiority. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

   a.    The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. The statutory claims under the MLA require

a simple identification of those consumers who are covered members under the statute, which can be accomplished through a search of the appropriate DoD database or by a query of a nationwide credit reporting agency, acts that could have and should have been done at the time of application.

b.   Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

c.   Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests;

d.   Westgate resides in this District and violated the MLA within this District, making this Court appropriate for the litigation of the claims of the entire Class; there are very few attorneys in the United States with any expertise or experience in prosecuting claims under the MLA, a nascent area of law, making it nearly impossible for Class members

to find adequate representation; and the claims of the individual Class members are small in relation to the expenses and efforts required by the litigation, making a Class action the only procedural method of redress in which Class members can, as a practical matter, recover.

77.   Westgate has acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Class as a whole. Plaintiffs and the Class are entitled to a declaration that their Agreements are void and Westgate should be enjoined from attempting to collect any monies pursuant to them or to enforce them in any way.

## COUNT I

### Violation of the Military Lending Act 10 U.S.C. §§ 987(a) & 987(e) and Implementing Regulations
### (On behalf of Plaintiffs and the Class)

**A.   Applicability of the MLA.**

78.   Plaintiffs and the Class repeat and re-allege the allegations in paragraphs 1 through 77 as if set forth herein in full.

79. Servicemember Plaintiff Nicholas Tina and Plaintiff Lissette Tina, his spouse, and all the other members of the Class were "covered borrowers" and "covered members" as those terms are defined pursuant to 32 C.F.R. § 232.3(g) because they were serving as active-duty members of the United States military and/or were their dependents at the times they contracted with Westgate.

80. Westgate was a "creditor" which provided "consumer credit" to Plaintiffs and the Class as those terms are defined in 32 C.F.R. §232.3(f), (h) & (i). Accordingly, the MLA applies to the timeshare loans of Plaintiffs and the Class.

## B. Inadequate Disclosures - 10 U.S.C. § 987(c)(1) and 32 C.F.R. § 232.6.

74. Plaintiffs' and Class members' standard form Agreements and Closing Disclosures do not provide required MLA written disclosures in the manner required by 10 U.S.C. § 987 and 32 C.F.R. § 232.6. Nor did Westgate separately provide the required oral disclosures to Plaintiffs and the Class.

## C. Jury Trial and Class Action Waivers - 10 U.S.C. § 987(e)(2).

75. As set forth above, Westgate's standard form timeshare Agreements contain a jury trial waiver and a class action waiver.

33

76.    The MLA, 10 U.S.C. § 987(e)(2), declares that requiring covered borrowers to submit to such provisions is illegal:

> (e) Limitations. —It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which—

> (2) the borrower is required to waive the borrower's right to legal recourse under any otherwise applicable provision of State or Federal law …; ….

77.    The Agreements require Plaintiffs and the Class to waive their right to a jury trial under the Seventh Amendment and their right to bring a class action under Fed. R. Civ. P. 23, two important forms of legal recourse.  As a result, the Agreements violate 10 U.S.C. § 987(e)(2).

**D.    Mandatory Arbitration – 10 U.S.C. § 987(e)(3).**

78.    Plaintiffs' and Class members' form Agreements contain a mandatory arbitration addendum (**Exhibit D**), which states:

> In the event of any controversy between the parties, including but not limited to any claim, dispute, suit, demand, cross claim, counterclaim, or third party complaint (whether statutory, in tort, or otherwise) arising out of or relating to the Contract for Purchase and Sale ("Contract") by and between you and Westgate Vacation Villas, LLC ("Westgate") or its negotiation, formation, execution, performance, breach, termination or enforcement, including claims arising from or relating to the collection of any debt arising hereunder (including, especially, but without limitation, claims under the Telephone Consumer Protection Act, Fair

34

Debt Collection Practices Act, and Fair Credit Reporting Act, and comparable state laws) and the interpretation or validity of the Contract, including the validity, scope or applicability of this Arbitration Addendum (also "Agreement"), shall be determined by binding arbitration.

79. The MLA, 10 U.S.C. § 987(e)(3), declares that requiring covered borrowers to submit to arbitration is unlawful:

(e) Limitations. —It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which —

(3) the creditor requires the borrower to submit to arbitration or imposes onerous legal notice provisions in the case of a dispute.

80. The mandatory arbitration provision in Westgate's Agreement violates 10 U.S.C. § 987(e)(3) because the MLA expressly prohibits agreements from requiring covered borrowers to submit to arbitration to resolve disputes.

**E.     Charging Prohibited Interest – 10 U.S.C § 987(a)(3)**

81. The MLA, 10 U.S.C. § 987(a) makes it unlawful for a creditor to "require" covered borrowers to "pay interest" on loans that contain terms which are prohibited by the MLA. As discussed above, the MLA prohibits class action waivers and jury trial waivers in extensions of consumer credit to covered borrowers like Plaintiff and the Class under

35

10 U.S.C. § 987(e)(2). Likewise, the MLA prohibits creditors from requiring covered members to agree to binding arbitration under 10 U.S.C. § 987(e)(3). Further, by making written and oral disclosures mandatory, extensions of credit as to which such disclosures are not provided are also specifically prohibited by the MLA.

82. Thus, Westgate violates § 987(a) by requiring Plaintiffs and the Class to pay interest on timeshare loans which contain prohibited class action waivers, jury trial waivers, arbitration provisions, and which do not contain the mandatory written disclosures. Pursuant to the definitions section of the MLA (10 U.S.C. § 987(i)(3)), "[t]he term "interest" includes all cost elements associated with the extension of credit, including fees, service charges, renewal charges, credit insurance premiums, any ancillary product sold with any extension of credit to a servicemember or the servicemember's dependent, as applicable, and any other charge or premium with respect to the extension of consumer credit."

**F.    Relief to Which Plaintiffs and the Class Are Entitled**

83. 10 U.S.C. § 987(5) provides for civil liability as follows:

**(5) Civil liability.**

**(A) In general.** --A person who violates this section with respect to any person is civilly liable to such person for--

**(i)** any actual damage sustained as a result, but not less than $500 for each violation;

**(ii)** appropriate punitive damages;

**(iii)** appropriate equitable or declaratory relief; and

**(iv)** any other relief provided by law.

**(B) Costs of the action.** --In any successful action to enforce the civil liability described in subparagraph (A), the person who violated this section is also liable for the costs of the action, together with reasonable attorney fees as determined by the court.

84. Westgate is a person who violated the MLA as the term "person" is defined in the MLA. Plaintiffs and the Class have suffered recoverable actual damages caused by Westgate's violations of the MLA in the amount of the interest they paid to Westgate which Westgate was not entitled to charge. They are entitled to recover (via judgment against Westgate) as actual damages the greater of: (a) all interest they paid in connection with or pursuant to the Agreements, or (b) $2,500, which represents $500 for failing to give the required written disclosures, $500 for failing to give the required oral disclosures, $500 for including an arbitration provision in the Agreement, $500 for including a jury trial

waiver in the Agreement, and $500 for including a class action waiver in the Agreement.

85.    Plaintiffs and the Class are additionally entitled to a judgment against Westgate for all the equitable and declaratory relief set forth below, appropriate punitive damages, the costs of this action and reasonable attorneys' fees.

86.    The United States Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979). "By declaring certain contracts void, [the MLA] by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere[,]" for "[a] person with the power to void a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid." *Id.* at 18. This scheme "displays a [congressional] intent to create not just a private right but also a

private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Transamerica*, 444 U.S. at 15).

87. Pursuant to this implied right of action, Plaintiffs and the Class seek: (1) a declaration that their Agreements were void from their inception for the MLA violations set forth herein, (2) an injunction against Westgate from seeking to enforce the payment obligations under the Agreements in any manner, (3) an injunction against Westgate requiring them not to make any negative reports or communications to any credit reporting agencies or anyone else about past or future nonpayment under the Agreements by Plaintiffs and the Class, (4) an injunction against Westgate requiring them to communicate to all the major credit reporting agencies that any prior negative reports about late payments or nonpayment by Plaintiffs and the Class were in error and should be removed from Plaintiffs' and the Class's credit reports and that the payment obligations of Plaintiffs and the Class have been satisfied, and (5) a judgment against Westgate for all amounts paid by Plaintiffs and the Class in connection with or pursuant to the Agreements.

88.     Additionally, or alternatively, pursuant to 10 U.S.C. § 987(5), Plaintiffs and the Class have suffered recoverable actual damages caused by Westgate's violations of the MLA because they paid Westgate money pursuant to timeshare agreements that were illegal and void from their inception pursuant to 10 U.S.C. § 987(f)(3). Accordingly, Plaintiffs and the Class are entitled to recover from Westgate as actual damages the greater of: (a) all amounts they paid to Westgate in connection with or pursuant to the Agreements, or (b) $2,500, which represents $500 for failing to give the required written disclosures, $500 for failing to give the required oral disclosures,  $500 for including an arbitration provision in the Agreement, $500 for including a jury trial waiver in the Agreement, and $500 for including a class action waiver in the Agreement. They are additionally entitled to a judgment against Westgate for all the equitable and declaratory relief set forth above, appropriate punitive damages, the costs of this action and reasonable attorneys' fees.

## COUNT II
## Unjust Enrichment/Restitution
## (On behalf of Plaintiffs and the National Class)

89.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 77 as if set forth herein.

90.    This Count for unjust enrichment is pleaded in the alternative to Count I as to members of the Class only.

91.    As set forth above, Westgate violated the MLA in no less than five separate manners. The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

92.    Under Florida common law, parties who benefit from contracts that are void *ab initio* because they violate public policy, or in this case violate the MLA and corresponding federal regulations, should not be able to retain the benefit they received as a result of any wrongdoing. *See Vista Designs v. Silverman,* 774 So. 2d 884 (Fla. 4th DCA 2001) (holding that because an appellee's actions constituted the unauthorized practice of law, he was not entitled to keep the monies paid to him under a fee agreement declared void *ab initio* based on quantum

41

meruit because public policy dictated that the appellee should not benefit from his wrongdoing).

93. The United States Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, at 19 (1979).

94. Here, the Plaintiffs and the National Class conferred a benefit on Westgate by paying it under the illegal and void Agreements, payments which Westgate knew about.

95. Westgate voluntarily accepted and retained the benefits conferred on it by retaining the payments made under the illegal and void Agreements by Plaintiffs and the National Class.

96. The circumstances render Westgate's retention of the benefits inequitable, so Westgate must pay to Plaintiffs and the National Class the value of the benefit conferred in the form of restitution, which value is all amounts they paid to Westgate in connection with or pursuant to the Agreements.

97.    As a result of Westgate's numerous violations of the MLA, the Agreements between Westgate and Plaintiffs and the National Class were void from their inception, making it inequitable for Westgate to retain the benefits it received based upon the void Agreements, and requiring it to disgorge to Plaintiffs and the Class all amounts they paid in connection with or pursuant to the illegal and void Agreements.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs request the Court award them the following relief:

A.    An order certifying this action to proceed as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class Representatives, and appointing the undersigned as Class Counsel;

B.    A judgment declaring that Plaintiffs' and the Class's Agreements were void from the inception because they violated the MLA and awarding Plaintiffs and the Class the equitable, declaratory and injunctive relief set forth above pursuant to their implied right of action under 10 U.S.C. § 987 and/or 10 U.S.C. § 987(5)(A)(iii) and/or restitution/unjust enrichment under Florida law;

C. A judgment awarding Plaintiffs and Class members as actual damages the greater of: (i) all payments they made in connection with or pursuant to the illegal and void Agreements, (ii) the interest payments they made in connection with or pursuant to the illegal and void Agreements, or (iii) $500 per MLA violation, together with appropriate punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A);

D. A judgment awarding Plaintiffs and the Class reasonable attorneys' fees and costs incurred in this action pursuant to 10 U.S.C. § 987(f)(5)(B);

E. A judgment awarding Plaintiffs and the Class all pre-judgment and post-judgment interest recoverable at law or in equity; and

F. A judgment awarding Plaintiffs and the Class such other and further relief to which they are justly entitled.

### JURY TRIAL DEMAND

Plaintiffs and the Class demand a jury trial on all issues so triable.

Respectfully submitted this 3rd day of October, 2025.

**VARNELL & WARWICK, P.A.**

/s/ Jeffrey L. Newsome, II

Jeffrey L. Newsome, II: 1018667
Janet R. Varnell, FBN: 0071072
Brian W. Warwick, FBN: 0605573
Pamela G. Levinson, FBN: 538345
Christopher J. Brochu, FBN: 1013897
400 N. Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com
plevinson@vandwlaw.com
jnewsome@vandwlaw.com
cbrochu@vandwlaw.com

**CRAIG E. ROTHBURD, P.A.**
Craig E. Rothburd, FBN: 0049182
Dylan J. Thatcher, FBN: 1031532
320 W. Kennedy Blvd., #700
Tampa, Florida   33606
Telephone:(813) 251-8800
*craig@rothburdpa.com*
*dylan@rothburdpa.com*
*maria@rothburdpa.com*

**JEEVES LAW GROUP, P.A.**
Scott R. Jeeves, FBN: 0905630
2100 1st Ave S Ste 2
Saint Petersburg, FL 33712-1212
Telephone: (727) 894-2929
*sjeeves@jeeveslawgroup.com*
*khill@jeeveslawgroup.com*

**JEEVES MANDEL LAW GROUP, P.C.**
Roger L. Mandel
(admitted *pro hac vice*)
2833 Crockett St, Suite 135

Fort Worth, TX  76107
Telephone: 214-253-8300
*rmandel@jeevesmandellawgroup.com*

***Counsel for Plaintiffs,
individually and on behalf of all
others similarly situated***

46

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Jeffrey L. Newsome, II
Jeffrey L. Newsome, II

47